

The following constitutes the order of the Court.
Signed: December 7, 2018

_____
**Charles Novack**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

DELTA WATERWAYS, LLC,

         Debtor.

Case No.  18-42076 CN
Chapter 11

**ORDER GRANTING RELIEF FROM
THE AUTOMATIC STAY**

      On November 30, 2018, the court conducted an evidentiary hearing on Creditor Atlantic Capital Finance Company's motion for relief from the automatic stay.  Atlantic Capital, which is secured by a deed of trust on Chapter 11 debtor Delta Waterways, LLC's marina located in Brentwood, California, contends that there are ample grounds under Bankruptcy Code §§ 362(d)(1) and (d)(2) to lift the automatic stay and allow it conduct a trustee's sale.  All appearances were noted on the record, and the following constitutes this court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

      Chapter 11 Delta Waterways, LLC ("Delta Waterways") operates a marina in Brentwood, California.  Delta Waterways filed its Chapter 11 on September 6, 2018 to stay the foreclosure proceedings initiated by Atlantic Capital Finance Company ("Atlantic Capital"), which holds the senior deed of trust against the marina.  Atlantic Capital asserts that its secured claim (as of the petition date) totals $2,300,238.28, and that the marina is worth no more than $2.1 million.  Delta Waterways has not made a post-petition payment to Atlantic Capital under its note, and it has used Atlantic Capital's cash collateral without its consent or a court order.

Case: 18-42076   Doc# 90   Filed: 12/07/18   Entered: 12/07/18 15:53:51   Page 1 of 7

Delta Waterway's financial management processes can charitably be described as haphazard and incomplete. Kevin Hinman (Delta Waterways's owner and natural responsible individual) testified that he only occasionally deposited rent money into the Debtor-In-Possession account, and would toss the cash payments into a satchel. He also could not state the amount of funds that Delta Waterway held in its debtor-in-possession account. While Atlantic Capital's monthly note payment is approximately $14,000 and Delta Waterways's total monthly operating expenses exceed $25,000, Delta Waterways's monthly operating reports show gross receipts of no more than $15,000. Its Statement of Financial Affairs indicate that its monthly pre-petition income during 2018 averaged approximately $18,000. The evidence further indicated that Hinman used Delta Waterways's bank account as his own, used the marina as collateral to secure a $1.2 million debt that he owed to his former spouse[1], created a post-petition "Go Fund Me" webpage to solicit funds to finance the marina's operations, and regularly relied on friends and family to provide Delta Waterways with post-petition cash to maintain its minimal operations (all without a bankruptcy court order). Simply, Delta Waterways does not dispute that it cannot, under present management and operations, make its monthly note payments to Atlantic. Nor did it propose, in any sensible way, any other form of adequate protection.[2]

Atlantic Capital retained an experienced appraiser, G. Michael Yovino-Young, to value the marina. His testimony, which this court finds to be credible, indicated that the marina has substantial deferred maintenance. Yovino-Young valued the marina at $2,160,000 using the income capitalization approach, and $2,060,000 under the market approach.[3] Given the physical state of the

---

[1] This junior deed of trust was recorded within two years of the bankruptcy filing and was not disclosed on Delta Waterways's Statement of Financial Affairs. Hinman testified that his ex-wife withdrew the deed of trust post-petition.

[2] Atlantic Capital also contends that Delta Waterway lacks maritime and worker's compensation insurance. While Atlantic Capital filed the declaration of Douglass Ryder in support of these allegations, Ryder did not appear at trial for cross-examination. The court therefore will not consider his declaration. Hinman did, however, provide some testimony on this subject.

[3] The appraiser testified that the marina's income justified a value of $1,662.500, and he supplemented this amount with a $500,000 valuation of Delta Waterway's 25 acres of "surplus

marina's berth rentals and the lackluster operations of the mini mart, the court believes that the capitalized value is too generous, and it therefore adopts the $2,060,000.00 value.

Delta Waterways did not offer any appraiser testimony. Instead, Hinman testified that the marina was worth approximately $2.5 million. Regardless of whether Hinman can opine on this matter under Federal Rule of Evidence 702, he offered no reasoned rationale for his valuation[4]. Accordingly, this court gives his testimony no weight.

Given the $2.060 million valuation, Atlantic Capital contends that it is under-secured. Atlantic Capital offered testimony to demonstrate that a) its pre-petition debt totaled $2,300,238.28, b) Delta Waterways has not made any post-petition payments, and c) it has incurred substantial post-petition attorneys fees and costs that, while not included in its note calculation in Exhibit 3, are nevertheless recoverable under its note and deed of trust. While Delta Waterways contends that some of the service expenses listed on Exhibit 3 (for example, the engineering, Corelogics, water treatment, Blackwater Diving and Brentwood Disposal expenses) are not recoverable under the note and deed of trust, the court disagrees, and refers the parties to the "Lender's Expenditures" clause in the deed of trust and the "Attorney's Fees; Expenses" clause in the parties' promissory note.[5]

Atlantic Capital is entitled to relief from stay under Bankruptcy Code § 362(d)(1). Section 362(d)(1) provides that "On request of a party in interest and after notice and a hearing, the court shall grant relief from stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-(1) for cause, including the lack of adequate protection of an interest in property of such party in interest." Cause exists here, as Delta Waterways

---

land."

[4] During Delta Waterways's cross examination of Yovino-Young, its attorney raised the issue that Delta Waterways paid approximately $2.7 million for the property in 2010. Given Yovino-Young's extensive 2016 and 2018 appraisals, this court gives no weight to an eight year old purchase price.

[5] Even if this court disallowed all such service expenses, including the listed attorney's fees, the note balance still exceeds the marina's value. Since Atlantic Capital did not provide the court with much in the way of evidence regarding the exact amount of its post-petition attorneys fees and expenses, the court has not considered them in determining whether there is equity in the marina.

3

**ORDER**

has not offered any credible adequate protection to Atlantic Capital. *See* Bankruptcy Code § 361. Atlantic Capital is under-secured, and Delta Waterways has not made or realistically offered to make any post-petition payments. Delta Waterways's unauthorized use of Atlantic Capital's cash collateral deepens this court's concerns regarding the lack of adequate protection. *See*, *e.g.*, In re Madawaska Hardscape Prods., 476 B.R. 200, 215 (Bankr. D.S.C. 2012).

The testimony of Lee Greenberg did little to allay Delta Waterways's problems. While this court was entertained by Greenberg's template for the marina's financial revival, his approach was more akin to "Field of Dreams" than a viable Chapter 11 plan of reorganization. Moreover, Greenberg was uncertain whether his proposed funding would be used to cure the Atlantic Capital arrears or pay for the marina's substantial deferred maintenance and/or his proposed, innovative improvements. Nor was he fully ready to financially commit to a project whose total cost and success was (to say the least) uncertain. Given the absence or any real or proposed adequate protection, relief from the automatic stay under (d)(1) is warranted. Accordingly, Atlantic Capital's relief from stay motion under Bankruptcy Code § 362(d)(1) is granted.

Atlantic Capital's motion for relief under § 362(d)(2) is also granted. Section 362(d)(2) authorizes this court to grant relief from the automatic stay "with respect to a stay of an act against property under subsection (a)of this section, if - (A) the debtor does not have any equity in such property; and (B) such property is not necessary to an effective reorganization." Atlantic Capital has satisfied both elements. As stated above, there is no equity in the marina. In addition, the marina is not necessary to an effective reorganization. An "effective reorganization" requires that there be a reasonable possibility of a successful reorganization within a reasonable time. *See* United Sav. Ass'n v. Timbers of Inwood Forest Assoc. Ltd., 484 U.S. 365, 376, 98 L.Ed. 2d 740, 108 S.Ct. 626 (1988). The Ninth Circuit Bankruptcy Appellate Panel described this element as follows:

> While it is true that a relief from stay hearing should not be converted into a confirmation hearing, the "effective reorganization" requirement enunciated by the Supreme Court . . . requires a showing by a debtor . . . that a proposed or contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed. Courts usually require the debtor to do more than manifest unsubstantiated hopes for a successful reorganization. Recently, a bankruptcy court summarized the cases interpreting § 362(d)(2)(B) and *Timbers* and concluded that the burden of proof is a "moving target which is more difficult to attain as the Chapter 11 case progresses." That court concluded that the burden can be separated into four

4

stages based upon when the creditor requests relief from the automatic stay. In the early stage of the case, "the burden of proof . . . is satisfied if the debtor can offer sufficient evidence to indicate that a successful reorganization within a reasonable time is "plausible." Near the expiration of the exclusivity period, "the debtor must demonstrate that a successful reorganization within a reasonable time is "probable." After the expiration of the exclusivity period, "the debtor must offer sufficient evidence to indicate that a successful reorganization within a reasonable time is "assured." Regardless of the amount of time a case has been pending, if "the evidence indicates that a successful reorganization within a reasonable time is "impossible," the court must grant relief from the stay." [citations omitted.] Sun Valley Newspapers v. Sun World Corp. (In re Sun Valley Newspapers), 171 B.R. 71, 75 (Bankr. 9th Cir. 1994).

Delta Waterways filed its Chapter 11 case on September 6, 2018, and it must demonstrate that a successful reorganization within a reasonable time is plausible. Webster's New Collegiate Dictionary defines the term "plausible" as "appearing worthy of belief."

Delta Waterways filed its Chapter 11 plan of reorganization on November 28, 2018 (the "Plan"), and it does not plausibly demonstrate that Delta Waterways can successfully reorganize with a reasonable amount of time. The Plan, as written, is premised on Greenberg investing anywhere from $250,000 to $500,000 (in exchange for an indeterminate percentage in the business), which funds will be used to cure the Atlantic Capital default, make necessary repairs, and develop the marina's excess acreage into a RV park or vacation center.[6] The Plan's financial projections also heavily rely on the income potential of the much traveled "Forbes Island," which is presently anchored in the marina's waters. The court respectfully refers the parties to Yovino-Young's comments regarding Forbes Island.

While Greenberg says that he has the funds to invest, the only tangible evidence of this is a short letter from J.P.Morgan Chase Bank[7] which informed Greenberg that it was providing him with a $600,000 line of credit which is "intended to be used to meet your short-term credit needs . . . ." The November 15, 2018 letter further states that it was not to be "construed to create a commitment

---

[6] As stated above, Greenberg was uncertain regarding the exact use of his funds and the amount of his eventual investment.

[7] The JPMorgan letter, dated November 15, 2018 is an exhibit to the Plan, which Delta Waterways did not introduce into evidence. Instead, Delta Waterways requested that this court take judicial notice of its filing.

5

to lend by JPMC." Greenberg has no experience operating a marina, and his testimony, while enthusiastic, was more of an artist looking at a blank canvass than a seasoned businessman critically determining whether to invest. In addition, Hinman has demonstrated that he is ill-equipped to manage the marina under any circumstances.

While pipe-dreams occasionally do come true, plausible means more than possible. *See*, *e.g.*, Ashcroft v. Iqbal, 556 U.S. 662, 678 (1979); Bell Atlantic v. Twomby, 550 U.S. 544 (2007). Delta Waterways offered no real evidence regarding what permits will be necessary to modernize and expand its operations, what further negotiations Greenberg and Delta Waterways need to engage in, the negotiation time lines with the other potential business partners casually mentioned in the Plan (Sam's Club, SeaStar, Inc. and Big Rigs RV) and how long the work will take. Simply, the evidence presented does not demonstrate that a successful reorganization within a reasonable time is plausible. Accordingly, Atlantic Capital is granted relief from stay under Bankruptcy Code § 362(d)(2).[8]

**\* \* \* END OF ORDER \* \* \***

---

[8] Delta Waterways's objection to Exhibit 13 is overruled. Exhibit 13 is a "Trustee's Sale Guarantee" issued by National Title Insurance regarding the marina. Delta Waterways objected to its introduction on the grounds that it was not the "best evidence" of the liens against the marina. Federal Rule of Evidence 1002 states in pertinent part that "An original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise." Federal Rule of Evidence 1004(d) provides otherwise. This rule states that an original is not required if "(d) the writing . . . is not closely related to a controlling issue." Delta Waterways does not contend that Atlantic Capital is unsecured, and Atlantic Capital used this exhibit to demonstrate that the marina serves as collateral (both voluntarily and otherwise) for several other obligations, including Hinman's personal tax obligations. The existence of these liens does not alter this court's finding that there is no equity in the marina (or, for that matter, any other finding of fact or conclusion of law herein).

6

Case No. 18-42076 CN

**COURT SERVICE LIST**

Delta Waterways, LLC
P.O. Box 622
Knightsen, CA 94548

Other recipients are ECF participants.

ORDER

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California